**CROSKEY STREET CONCERNED CITIZENS, Lyra Fortune, on her own behalf and on behalf of others similarly situated, Plaintiffs,**

v.

**George ROMNEY, Secretary of Housing and Urban Development, et al., Defendants.**

**Civ. A. No. 71–2502.**

United States District Court,
E. D. Pennsylvania.

Dec. 8, 1971.

Lawyers' Committee For Civil Rights Under Law, Edwin D. Wolf, Philadelphia, Pa., for plaintiffs.

Louis C. Bechtle, U. S. Atty., Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendants George Romney, Secretary of Housing and Urban Development, Theodore Robb, Regional Administrator, Dept. of Housing and Urban Development, Vincent A. Marino, Asst. Regional Administrator, Dept. of Housing & Urban Development, and United States Dept. of Housing & Urban Development.

Arthur Littleton, Mark S. Dichter, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant Tollin-Graboyes Co.

Robert J. Sugarman, Dechert, Price & Rhoads, Philadelphia, Pa., for Resident Advisory Board of Philadelphia, intervenor.

## OPINION

JOSEPH S. LORD, III, District Judge.

Plaintiffs filed this class action to enjoin the construction of a low rent housing project for the elderly in the 1700 block of North Croskey Street, Philadelphia, Pa. (herein referred to as "Project") and for other relief. Plaintiffs are residents of the area in which the Project is to be constructed. The individual defendants are those federal officials of the Department of Housing and Urban Development ("HUD") responsible for implementing the national housing policy. The Philadelphia Housing Authority ("PHA"), the local agency which proposed the Project, Tollin-Graboyes Company, the construction company under contract with PHA to build the Project, and HUD are also named as defendants.

In their complaint, plaintiffs allege that HUD failed to apply the proper site selection standards concerning the impact of the Project on racial concentration as required by the Civil Rights Acts of 1964, 42 U.S.C. § 2000a et seq., and of 1968, 42 U.S.C. § 3601 et seq. Plaintiffs claim that the Project will increase the racial concentration of the area which is over 95% black and thereby cause irreparable harm to plaintiffs. Plaintiffs also allege that PHA and HUD have concentrated low rent housing projects in predominantly black areas of Philadelphia thereby maintaining or increasing the existing pattern of racial segregation in housing in the city and that the Project will reinforce this pattern. Plaintiffs initially seek a preliminary injunction against construction of the Project. We have jurisdiction over the parties and jurisdiction of the subject matter under 28 U.S.C. §§ 1331, 1343 and 1361.

The Resident Advisory Board of Philadelphia has petitioned to intervene as plaintiff in order to represent the interests of all present and potential public housing tenants in Philadelphia. We will grant the motion. Intervenor does not join with plaintiff in seeking to enjoin the construction of the Project but does seek declaratory and injunctive relief to promote construction of public housing by PHA and HUD in all areas of Metropolitan Philadelphia.

A hearing on the plaintiffs' motion for a preliminary injunction was held on November 8–11, 1971. The motions for declaratory and injunctive relief concerning the overall effect of site selection policies of HUD and PHA on the racial concentration of public housing in Philadelphia were not considered at this hearing.

The Croskey Street Project is part of a package of five low rent elderly housing projects which were proposed in July, 1969 by PHA to HUD for federal funding. In accordance with regulations issued by HUD in compliance with the Civil Rights Act of 1964, HUD will not approve housing located in areas of racial concentration, i. e., concentration of minority groups, "unless alternative or additional sites in other areas provide a balanced distribution of the proposed housing" (herein referred to as "balanced program requirements"). 24 C.F.R. § 1.4(b) (2) (i); HUD Low Rent Housing Preconstruction Handbook, RHA § 7410. Since July, 1969, the proposed package of elderly projects has been revised in order to comply with HUD's balanced program requirement, and the present package includes the following sites:

(1) Croskey Street (also referred to as 23rd and Columbia)—100 units Black area;

(2) 50th and Haverford—69 units, Black area;

(3) 22nd and Venango—71 units, Black area;

(4) 52nd and Poplar—73 units, Black area;

(5) Washington Square West (also referred to as 8th and Locust)—360 units, White area.

Throughout the review of this package, HUD officials have conditioned approval of the black sites on the submission of an acceptable development program for Washington Square West, the balancing white site. However, HUD rec-

ognizes that the local housing authority cannot develop and submit plans for each of the sites in a package simultaneously nor is HUD necessarily able to fund all of these projects simultaneously. Therefore, HUD does not require that all projects in a package be commenced or completed at the same time as long as HUD has "clear and convincing evidence" that the local housing authority intends to comply with the balanced program requirement.

PHA has not submitted a development program for Washington Square West because of pending litigation concerning designation of a project area committee for the Washington Square West Urban Renewal Area. Washington Square West Project Area Committee, et al. v. H.U.D., Civ. No. 69–2972 (E.D. Pa.). However, HUD has permitted the first three black sites in the package to proceed before a development program has been submitted because HUD concluded that it had clear and convincing evidence that the project would be built. HUD based this conclusion on the assurance of PHA that the City of Philadelphia remains fully committed to build low income housing in the area, the nature of the pending litigation, the designation of a developer for Washington Square West, the approval by City Council of 400 units of low and low-moderate income housing in Washington Square West and the stated policy of HUD to cut off all future housing money for Philadelphia if a balancing site for the package is not built.

On the basis of the above evidence, HUD gave final approval to 50th and Haverford and 22nd and Venango in early 1970 (both of these projects are near completion) and to Croskey Street in June, 1971. Approval of 52nd and Poplar was denied in April, 1971 because of uncertainty at that time concerning the status of Washington Square West, but HUD officials testified that they subsequently were satisfied that Washington Square West would go forward and they would therefore approve 52nd

and Poplar if and when PHA submits the necessary documents to HUD.

In Shannon v. United States Dept. of H.U.D., 436 F.2d 809 (C.A.3, 1970), this Circuit held that while the Civil Rights Act of 1964 directed HUD to insure that its programs were nondiscriminatory in their effect, the Civil Rights Act of 1968 extended HUD's responsibilities by requiring that HUD act affirmatively to achieve fair housing. The court recognized that "undue concentration of persons of a given race, or socio-economic group, in a given neighborhood" can foster racial discrimination in violation of both the 1964 and 1968 Civil Rights Acts.

" * * * Increase or maintenance of racial concentration is prima facie likely to lead to urban blight and is thus prima facie at variance with the national housing policy." Shannon v. United States Dept. of H.U.D., supra, 436 F.2d at 821.

The court therefore held that HUD is required to use some institutionalized method of gathering relevant racial and socioeconomic information so that it can make an informed decision concerning the impact of site selection on racial concentration in compliance with its duties to prevent discrimination under the 1964 Act and to affirmatively promote fair housing under the 1968 Act. In addition, the court suggested considerations it felt were relevant to a proper determination by HUD.

In order to determine whether the plaintiffs are entitled to a preliminary injunction against construction of the Project, we must answer the following questions:

(1) Did HUD make an informed decision with respect to site selection of the Project in accordance with the *Shannon* standards?

(2) Did HUD comply with the affirmative action requirement of the Civil Rights Act of 1968 in deciding to approve the Project?

(3) Did HUD violate the Civil Rights Act of 1964 and its balanced pro-

gram requirement in approving the Project on the basis of the information before it concerning Washington Square West?

In *Shannon*, the evidence established that HUD did not consider the effect of the proposed program on the racial concentration of the area at all. In the present case, the fact that the Project was approved in accordance with HUD's balanced program requirement indicates that racial factors were considered to some extent. We must therefore inquire whether HUD adequately considered the impact of site selection on racial concentration in deciding to approve the Project so that the decision complied with the *Shannon* requirements.

The history of the approval of the Project indicates that two separate reviews of the site selection were made. The first review was made in June, 1970 and relied primarily on a Preliminary Site Report prepared by the HUD staff. The second review was made between January and July, 1971 in response to objections raised by the plaintiffs in this case, and the site was again approved in July, 1971 on the basis of a report from PHA and a Preliminary Environmental Clearance Worksheet prepared by HUD.

The Preliminary Site Report form requires HUD to compile the following information for each site selected of low-rent public housing:

"17. * * * Identify racial patterns of residency in the locality of selected sites. Show percentages of Negro and/or other minority populations. * * * Show location of existing public housing projects, schools and community facilities, and the dominant race of occupants or users of each in the locality of selected sites."

The Preliminary Site Report for the Project answered item 17 by indicating that "[t]his site is in an area of racial concentration" and that it is part of a package of sites including the balancing white site at Washington Square West.

The letter from PHA concerning the Project essentially discussed the site selection criteria for elderly projects including the services available in the area and the effect of the crime rate on the appropriateness of the site for elderly. The only discussion of the concentration of public housing in the area concluded that although there are three projects constituting 12% of the housing units in the three block area of the site, only 140 of 2,200 units of public housing are specifically designed for elderly. The letter did not discuss the issue of racial concentration of the area.

Finally, the Preliminary Environmental Clearance Worksheet discussed the difficulty PHA has had in acquiring land for sites for elderly projects in other areas of the city. The issue of racial concentration was answered by citing HUD's balanced program requirement.

In addition to the documentary evidence presented at the hearing, HUD officials testified, and we find as a fact, that they considered a number of the specific items suggested by the *Shannon* court as relevant to a determination of the effect of site selection on racial concentration. However, consideration of the *Shannon* issues was not reflected in any documents which recorded the review procedures of HUD nor were any specific studies of these issues asked for or made in connection with the approval of the Project site. In making the site selection decision, HUD officials relied on their general knowledge of the location and racial composition of low income housing and the reaction of local government authorities to proposals for low income housing rather than on a specific inquiry into each of the *Shannon* questions. Basically HUD considered that its balanced program requirement satisfied its obligation under *Shannon* to use an institutionalized method for gathering information and making a decision concerning the impact of the Project on racial concentration.

We believe that the balanced program requirement can only satisfy the procedural requirements of *Shannon* if

in administering the program HUD examines the effect of the choice of a particular black site in a package on the racial concentration of the area in which the site is located. The fact that a white site exists to balance the choice of the black site does not preclude examination of the question of whether construction of the project at the black site will maintain or increase racial concentration in the area, and if so, whether the need for the housing or other considerations outweigh this effect. *See* Shannon v. United States Dept. of H.U.D., *supra*, 436 F. 2d at 822.

■ We find that in approving the Project site HUD did consider the effect of site selection on the racial concentration of the area. First, in relying on the balanced program requirement, HUD analyzed the racial composition of the proposed sites in the package and provided that on a city-wide basis low income housing would also be built outside areas of minority concentration. Second, recognizing that three housing projects are located in the immediate area of the Project, HUD decided that it would only approve public housing for the elderly for this site because evidence suggests that in areas of high concentration of racial minorities elderly projects are more integrated than the surrounding community. Therefore, given the need for elderly housing both in the Project area in particular and in the city in general, HUD concluded that an elderly project could in fact tend to decrease the minority racial concentration in the Project area. Third, HUD has provided that the housing units in the black areas in the balanced program package are to be scattered among four sites to avoid large scale concentration of public housing in black areas.

■■ The essence of *Shannon* is that in order to make an informed decision on site selection consistent with the 1964 and 1968 Civil Rights Acts, the impact of the proposed site on the racial concentration of the project area must be considered. In order to insure that such consideration is given to each site selection decision, *Shannon* requires HUD to develop an institutionalized method for gathering relevant information on this issue. We find that HUD did not use and does not have such a formalized information gathering procedure which can be used each time a site selection decision is required. Nevertheless, we find that here HUD has considered the substantive issues concerning site selection and racial concentration raised by *Shannon* and that therefore HUD has made an informed decision on site selection in approving the Project. We feel that it would be elevating form above substance to grant a preliminary injunction on the ground that HUD did not use an "institutionalized" information gathering procedure in approving the Project when HUD nevertheless based its approval upon consideration of the substantive issues which an institutionalized method would be designed to bring to HUD's attention. We therefore deny plaintiffs' motion for a preliminary injunction on this ground. However, we emphasize that our decision in no way relieves HUD of its responsibilities under *Shannon* to develop a formalized information gathering procedure for insuring that adequate consideration of the effect of site selection on racial concentration is made in each future site selection decision.

Plaintiffs argue that HUD has not complied with the affirmative action requirement of the 1968 Civil Rights Act in approving the Project. Plaintiffs point out that HUD had not issued any regulations implementing the 1968 Act before the Project was approved, and plaintiffs argue that the regulations promulgated to implement the 1964 Civil Rights Act do not meet the affirmative action requirement of the 1968 Act. HUD maintains that although the balanced program requirement for site selection was developed to implement the 1964 Act, HUD has concluded that the program also satisfies the affirmative action requirement of the 1968 Act.

Although the *Shannon* court held that the 1968 Civil Rights Act's affirmative action requirement extended HUD's re-

sponsibilities beyond those set forth in the 1964 Civil Rights Act, the court did not define affirmative action in detail. The court stated that increase or maintenance of racial concentration is prima facie at variance with the national housing policy; however, the court went on to note that desegregation of housing is not the only goal of this policy.

"* * * There will be instances where a pressing case may be made for the rebuilding of a racial ghetto. We hold only that the agency's judgment must be an informed one; one which weighs the alternative and finds that the need for physical rehabilitation or additional minority housing at the site in question clearly outweighs the disadvantage of increasing or perpetuating racial concentration." Shannon v. United States Dept. of H.U.D., *supra*, 436 F.2d at 822.

Affirmative action as discussed in *Shannon* does not preclude construction of housing in areas of racial concentration when HUD has made an informed determination that such housing is needed, although HUD and the local housing authority would be prohibited from constructing public housing only in areas of racial concentration. HUD's balanced program requirement precludes construction only in areas of racial concentration. We find that in applying this program to the approval of the Project HUD made an informed determination of the need for the Project through its consideration of the impact of the site on racial concentration and its evaluation of the need for an elderly project in an area in which a number of housing projects already exist. We conclude that the plaintiffs have not established that the balanced program requirement as applied to the approval of the Project failed to satisfy the affirmative action requirement of the 1968 Civil Rights Act. In denying the motion for preliminary injunction on this ground, we do not hold that HUD can satisfy its obligations under the affirmative action requirement solely by following regulations promulgated under the 1964 Act. Although on final hearing we may conclude that affirmative action requires HUD to develop additional policies and programs to achieve fair housing, plaintiffs have not established that in approving the Project under the balanced program requirement HUD has violated the Civil Rights Act of 1968. HUD may be required to do more to achieve fair housing but this possibility in itself does not establish that what HUD did do was illegal.

Plaintiffs contend that even if the balanced program regulations satisfy the affirmative action requirement of the 1968 Act, HUD did not comply with these regulations in approving the Project because HUD did not have sufficient evidence that an adequate balancing site would be developed within a reasonable time. Plaintiffs maintain that given the difficulty encountered by PHA in placing projects in white areas in the past, the delays encountered in the development of Washington Square West and the lack of final approval by City Council to convey the land from the Redevelopment Authority to the developer, HUD's conclusion that it had clear and convincing evidence that Washington Square West would be built was arbitrary, capricious and contrary to the evidence before HUD.

We find that HUD was aware of the problems surrounding the development of Washington Square West as evidenced particularly by HUD's refusal to approve the 52nd and Poplar project and HUD's specific request for evidence from PHA that the City was committed to build low income housing in the Washington Square West area. The evidence presented to HUD by PHA indicated that City Council had passed an ordinance requiring the construction of at least 400 units of low and low-moderate income housing in the Washington Square West Urban Renewal Area, the City Planning Commission and PHA had approved the project and the Redevelopment Authority and PHA had designated a developer for the project. HUD officials testified, and we find as a fact, that in developing the balanced program requirement so that some sites in a pack-

age could be developed before others they thoroughly considered the possibility that a local housing authority could construct only black sites without providing the required balancing site. HUD concluded that a realistic response to this possibility was to adopt a policy that HUD would cut off all federal housing funds to the local authority until a balancing site was built.

We find on the basis of the evidence before us that HUD complied with the balanced program requirement and the Civil Rights Act of 1964 in concluding that it had clear and convincing evidence that Washington Square West would be built. More importantly for purposes of the motion for preliminary injunction we find that the plaintiffs have failed to establish that they would suffer irreparable injury if HUD's judgment on the future of Washington Square West is incorrect for although the Croskey Street Project would be constructed, the PHA would be barred from all further federal funds until a balancing site for the Project was built.

Our decision denying plaintiffs' motion for a preliminary injunction is without prejudice to the right of the plaintiffs and intervenor to present evidence at final hearing in support of their allegations that the effect of the public housing site selections policies of PHA and HUD has been to maintain or increase racial segregation in housing in Philadelphia.

We find that the plaintiffs have failed to establish a substantial likelihood that they will succeed on the merits of their claim that the Croskey Street Project was approved in violation of either the 1964 or 1968 Civil Rights Acts and the plaintiffs have failed to establish that they will suffer irreparable harm if the Project is constructed. Given the acknowledged need and desire for additional public housing presented to the court by PHA, HUD, and particularly by the Resident Advisory Board representing present and potential public housing tenants, we are unwilling to enjoin construction of such housing absent a clear and substantial showing of a violation of the Civil Rights Acts. This is not to suggest that we do not recognize the equally important need to promote fair housing or that we would be unwilling to fashion relief to promote fair housing if the appropriate case for such relief were before us. We do not find that plaintiffs have established such an appropriate case either in terms of establishing a violation of the Civil Rights Acts by HUD or PHA in approving the Project or in terms of establishing irreparable injury to the plaintiffs which would result from construction of the Project.

The foregoing shall be deemed our Findings of Fact and Conclusions of Law.